UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| LAWRENCE D. BILLUPS, | : | |
| | : | |
| Plaintiff, | : | REPORT AND |
| | : | RECOMMENDATION |
| - against - | : | |
| | : | 05 Civ. 9356 (DAB) (RLE) |
| DENT WIZARD INTERNATIONAL CORP., | : | |
| | : | |
| Defendant. | : | |

**To the HONORABLE DEBORAH A. BATTS, U.S.D.J.:**

## I. INTRODUCTION

*Pro se* plaintiff, Lawrence D. Billups ("Billups"), filed this action on November 3, 2005, against defendant, Dent Wizard International Corporation ("DWIC"), alleging unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. ("Title VII"), 42 U.S.C. § 1981, 42 U.S.C. § 1983, and unfair trade practices and competition in violation of 15 U.S.C. §§1, 15. On October 10, 2006, DWIC filed a motion to dismiss under Rules 12(b)(1), 12(b)(3), and 12(b)(6) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction, improper venue, and failure to state a claim. The matter was referred to the undersigned by the Honorable Deborah A. Batts on November 16, 2006. For the reasons which follow, the Court recommends that the motion to dismiss be **DENIED, in part, GRANTED, in part.**

## II. BACKGROUND

DWIC developed a proprietary paintless dent removal ("PDR") process used on vehicles with minor body damage. Affidavit in Opposition, John D'Ercole, October 11, 2006, ("Opp. Aff."), Exh. N. This PDR process eliminates damage created by dings, creases, and the weather,

and restores the factory finish and value of the vehicle at a fraction of the cost of traditional body repair methods.  **Id.**  The exclusive DWIC PDR process is its trade secret and is not sold or otherwise provided outside its worldwide network.  **Id.**  On October 15, 2001, Billups was hired as a PDR technician.  **Id.**  While DWIC alleges that Billups attended a training program in Missouri where he was taught the company's PDR process, **id.**, Billups claims that he was given no technical training, but rather only attended a two-day orientation, and therefore had no knowledge of DWIC's process.  *See* Affirmation of Lawrence Billups ("Billups Aff.") at 2.  Billups alleges that he was an expert in the field prior to his employment with DWIC.  **Id.**

Both parties agree that prior to commencing his work for DWIC in New York, Billups entered into the company's standard New York Technician's Nondisclosure, Nonsolicitation, and Noncompete Agreements ("the agreements").  Opp. Aff., Exh. N; Billups Aff. at 2.  The agreements specifically provided that Billups could not engage in competitive activity during his employment with DWIC by providing PDR services to anyone other than on DWIC's behalf.  Opp. Aff., Exh. N.  The agreements also expressly prohibited Billups from soliciting or inducing any customers of DWIC to patronize any competing provider of paintless dent removal.  **Id.**  With respect to the agreements, Billups asserts that there was no opportunity to seek counsel and the noncompete clause was "obscure and general."  Billups Aff. at 2.

DWIC alleges that in February 2005, one of its employees reported that Billups and another PDR technician were seen repairing vehicles for one of DWIC's clients on two consecutive Saturdays without invoicing the work on behalf of DWIC.  Opp. Aff., Exh. N.  According to DWIC, when Billups was informed that he would be suspended pending further investigation of these allegations, Billups became defiant and stated that if he was being

2

suspended, DWIC might as well fire him.  **Id.**  At that point, DWIC considered Billups's employment terminated.  **Id.**  Billups claims, however, that he was discontent with his employment with DWIC because of its practice of hiring underqualified white managers and expecting him to train them.  Billups Aff. at 2.  Billups had expressed his interest in pursuing a management position within DWIC and had complained to one of the managers about what he considered to be discriminatory actions.  **Id.**  Although Billups acknowledges that he was informed of the suspension, he alleges that he only learned of his termination from his health insurance company.  **Id.**  DWIC asserts that Billups was terminated for theft by performing work on the side for clients and keeping the profit.  Opp. Aff., Exh. N.

Billups alleges that as early as October 2001 he was subjected to DWIC's unlawful employment practices, including disparate treatment, suspension and termination in violation of company policies, and denial of management promotions based on race in favor of less qualified white applicants.  Plaintiff's Verified Complaint ("Compl.") at ¶ 6.  Billups also claims that DWIC continuously engaged in unfair trade practices and competition by enforcing contracts of adhesion through its noncompete, nondisclosure, nonsolicitation, and secrecy agreements.  **Id.** at ¶ 7.  Billups claims that DWIC enforced these contracts to further its pattern of discrimination, in retaliation for allegations of race discrimination, and to impose illegal trade restraints.  **Id.**

### III.  PROCEDURAL HISTORY

DWIC filed a lawsuit against Billups on May 26, 2005, in Missouri's Circuit Court of St. Louis County in the Twenty-First Judicial Circuit, seeking injunctive relief and damages.  Opp. Aff., Exh. I.  On July 29, 2005, the Missouri court issued a temporary restraining order ("Missouri TRO") enjoining Billups from "soliciting or providing paintless dent removal services, directly or

indirectly, to those customers of DWIC in and around New York." **Id.** On August 31, 2005, the court found Billups to be in contempt for failure to abide by the terms of the Missouri TRO. **Id.** Under the Missouri Contempt Judgment, Billups was fined $1,300 per day, retroactively to August 17, 2005, and continuing at that per diem rate as a means of obtaining his compliance with the Missouri TRO. Defendant's Memorandum of Law in Support of Motion to Dismiss ("Def. Mem.") at 5. On April 13, 2006, as a result of Billups's failure to comply with discovery, the Missouri court struck Billups's Answer and entered an interlocutory judgment of default in favor of DWIC. **Id.** On or about May 1, 2006, the Missouri Court entered the Missouri Final Judgment in favor of DWIC against Billups for the sum of $169,552.92, and ordered that Billups, and all those acting in concert with him, were permanently enjoined from providing any paintless dent removal services. **Id.** at 6.

### III.  DISCUSSION

**A. Subject Matter Jurisdiction**

  **1.  Standard for Dismissal under Rules 12(b)(1)**

In considering a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, a court must assume as true factual allegations in the complaint. *See* **Shipping Financial Services Corporation v. Drakos**, 140 F.3d 129, 131 (2d Cir. 1998) (*citing* **Scheuer v. Rhodes**, 416 U.S. 232, 236 (1974)). Where jurisdictional issues are in dispute, the court may look to "evidence outside the pleadings, such as affidavits." **Filetech S.A. v. France Telecom, S.A.**, 157 F.3d 922, 932 (2d Cir. 1998) *(quoting* **Antares Aircraft, L.P. v. Federal Republic of Nigeria**, 948 F.2d 90, 96 (2d Cir. 1991)), *vacated on other grounds*, 505 U.S. 1215 (1992). More importantly, the federal plaintiff bears the burden of proof by a preponderance of the evidence that the district

court has subject matter jurisdiction. *See* **Luckett v. Bure** 290 F.3d 493, 496-97 (2d Cir. 2002).

A Rule 12(b)(1) motion may be appropriate when a plaintiff's federal claim is not even minimally plausible. *See* **Town of West Hartford v. Operation Rescue**, 915 F.2d 92, 99 (2d Cir. 1990). "[W]hen the contested basis of federal jurisdiction is also an element of plaintiff's asserted federal claim, the claim should not be dismissed for want of jurisdiction except when it appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." **AVC Nederland B.V. v. Atrium Inv. Partnership**, 740 F.2d 148, 152-53 (2d Cir. 1984) (internal quotation marks omitted).

**2. Analysis**

DWIC does not challenge this court's subject matter jurisdiction on the grounds of federal question. Instead, it asserts that the **Rooker-Feldman** doctrine bars this Court from considering Billups's claims of unlawful employment practices and unfair trade practices. Def. Mem. at 8-9 (***citing*** **D.C. Court of Appeals v. Feldman**, 460 U.S. 462 (1983); **Rooker v. Fidelity Trust Co.,** 263 U.S. 413 (1923)). "The Supreme Court has applied the **Rooker-Feldman** doctrine to defeat federal subject-matter jurisdiction exactly twice, in the two cases for which the doctrine is named." **Hoblock v. Albany County Board of Elections**, 422 F.3d 77, 83 (2d Cir. 2005). Under this doctrine, "federal district courts lack jurisdiction over suits that are, in substance, appeals from state court judgments." **Id.** at 84. Furthermore, "**Rooker-Feldman** and preclusion are entirely separate doctrines." **Id.** at 85 (***citing*** **Exxon Mobil Corp. v. Saudi Basic Industries Corp.**, 544 U.S. 280, 284 (2005)). The **Rooker-Feldman** doctrine is only applied to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of

5

those judgments." **Id.** (*quoting* **Exxon Mobil**, 544 U.S. at 284).  Accordingly, the doctrine bars federal suits that meet the following four pronged test:  "First, the federal-court plaintiff must have lost in state court.  Second, the plaintiff must 'complain[ ] of injuries caused by [a] state-court judgment[.]'  Third, the plaintiff must 'invit[e] district court review and rejection of [that] judgment[ ].'  Fourth, the state-court judgment must have been 'rendered before the district court proceedings commenced'--i.e., Rooker-Feldman has no application to federal-court suits proceeding in parallel with ongoing state-court litigation."  **Id.** (*quoting* **Exxon Mobil**, 544 U.S. at 284; alterations in **Hoblock**).

### a. Procedural Requirements

In **Hoblock**, the court began its analysis of the **Exxon Mobil** holding by separating the **Rooker-Feldman** requirements into two categories, procedural and substantive.  **Id.**  The procedural requirements are: (1) "the federal-court plaintiff must have lost in state court" and (2) "the state-court judgment must have been 'rendered before the district court proceedings commenced[.]'"  **Hoblock**, 422 F.3d at 85 (*quoting* **Exxon Mobil**, 544 U.S. at 284).  However, the court in **Hoblock** later rephrases the same requirements as: "1) the federal suit must follow the state judgment; and 2) the parties in the state and federal suits must be the same."  **Id.** at 89 (*quoting* **Exxon Mobil**, 544 U.S. at 284).

Here, the first procedural requirement is satisfied as Billups clearly lost in the state forum when the Missouri circuit court issued a TRO to prevent him from providing paintless dent removal services, and imposed a fine.  Opp. Aff. at Exhs. E-G.  The Second Circuit has long held that interlocutory judgments, as in the instant case, constitute a 'state court judgment' within the context of the **Rooker-Feldman** doctrine.  *See* **Gentner v. Shulman**, 55 F.3d 87, 89 (2d Cir.

1995); *accord* **Chu v. City of New York**, 2003 WL 22769595 (2d Cir. Nov. 21, 2003); *see also* **Campbell v. Greisberger**, 80 F.3d 703, 707 (2d Cir. 1996).  The temporal requirement is also satisfied because the TRO, Modified TRO, and Final Order were entered and filed on July 29, 2005, August 16, 2005, and August 31, 2005, respectively, prior to the filing of the federal complaint on November 3, 2005.  Def. Mem. at 4-5, 7.  Therefore, both of the procedural requirements of the **Rooker-Feldman** doctrine are fulfilled.

### b. Substantive Requirements

Although the procedural requirements under the **Rooker-Feldman** doctrine are met, Billups's claims are not barred because the substantive requirements are not satisfied.  To bar a federal suit, "(1) the federal plaintiff must complain of injury from a state-court judgment; and (2) the federal plaintiff must seek federal-court review and rejection of the state-court judgment." **Hoblock**, 422 F.3d at 85 (*quoting* **Exxon Mobil**, 544 U.S. at 284).  It is not always evident when the source of injury is caused by a state-court judgment.  For example, "in some circumstances, federal suits that purport to complain of injury by individuals in reality complain of injury by state-court judgments." **Id.** at 88.  In response, the Second Circuit has implemented the following test: "a federal suit complains of injury from a state court judgment, . . . when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it.  Where a state-court judgment causes the challenged third-party action, any challenge to that third-party action is necessarily the kind of challenge to the state judgment that only the Supreme Court can hear." **Id.**

In his first cause of action, Billups maintains that DWIC engaged in unlawful employment practices in violation of Title VII.  The second cause of action claims that DWIC failed to

7

compensate him for accrued overtime and commission pay. Compl. at ¶¶ 12, 15. Similarly, Billups's ninth cause of action alleges damages based on racial discrimination in his employment, compensation, and termination. **Id.** at ¶ 42. The wrongful acts that Billups complains of in these three causes of action all occurred during the course of his employment prior to any state court proceeding. Therefore, these injuries arise solely out of DWIC's conduct and were not addressed in the state suit. Accordingly, these claims fail to meet the first substantive prong of the **Rooker-Feldman** doctrine. *See* **Hoblock**, 422 F.3d at 85. Thus, the **Rooker-Feldman** doctrine does not bar Billups's first, second, and ninth causes of action, and federal jurisdiction is appropriate.

Billups's remaining claims substantively complain of injuries produced by the agreements. In particular, Billups alleges injury based on DWIC's efforts to enforce the agreements. Compl. at ¶¶ 19-27, 36-40. He asserts that DWIC's course of conduct damaged him both financially and professionally in that it prevented him from engaging in skillful work, and hurt his reputation. **Id.** Similarly, in his sixth cause of action Billups asserts injury from the execution of the agreements, which he signed at the inception of his employment. **Id.** at ¶¶ 29-34.

The injuries that Billups complains of actually begin with the signing of the agreements, not the Missouri court's enforcement of the agreements. This case is distinguishable from **Hoblock**, where voters petitioned the New York Supreme Court to have various absentee ballots counted and then sued in federal district court when they lost. *See* **Hoblock**, 422 F.3d at 89. In that case, the injury was caused by the state-court judgment because without that judgment, "the Board would have counted the challenged absentee ballots." **Id.** However, here, even if the state court had not issued the Missouri TRO, the agreements' provision prohibiting Billups from servicing DWIC's clients independently would still be in place. The state-court judgment did not

create the agreements that were signed by Billups when he started working for DWIC. Rather, it merely "ratified" the injury that is the basis of Billups's complaint. As a result, the **Rooker-Feldman** doctrine does not bar Billups's third, fourth, fifth, sixth, seventh, and eighth causes of action from going forward. Therefore, I recommend that DWIC's motion to dismiss for lack of subject matter jurisdiction be **DENIED.**

**B. Failure to State a Claim**

    **1. Standard for Dismissal Under 12(b)(6)**

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure should be granted only if it appears beyond doubt that "no relief could be granted under any set of facts that could be proved consistent with the allegations." **H.J., Inc. v. Northwestern Bell Tel. Co.**, 492 U.S. 229, 249-50 (1989) (*quoting* **Hishon v. King & Spalding**, 467 U.S. 69, 73 (1984)). In reviewing a Rule 12(b)(6) motion, this Court must accept the factual allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See* **Hishon**, 467 U.S. at 73. The test is not whether a plaintiff is likely to ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims. *See* **Chance v. Armstrong**, 143 F.3d 698, 701 (2d Cir. 1998). The Court does not, however, have to accept as true "conclusions of law or unwarranted deductions of fact." **First Nationwide Bank v. Gelt Funding Corp.**, 27 F.3d 763, 771 (2d Cir. 1994), *cert. denied*, 513 U.S. 1079 (1995).

Furthermore, it is well established that the Court must construe the "complaints filed by *pro se* litigants liberally and 'interpret them to raise the strongest arguments that they suggest.'" **Pabon v. Wright**, 459 F.3d 241, 248 (2d Cir. 2006) (*quoting* **Burgos v. Hopkins**, 14 F.3d 787, 790 (2d Cir.1994)); *see also* **Haines v. Kerner**, 404 U.S. 519, 520 (1972) (*per curiam*) (*pro se*

complaints should be held "to less stringent standards than formal pleadings drafted by lawyers"). Moreover, in deciding a motion to dismiss involving a *pro se* plaintiff, the court can look beyond the "four corners of the complaint" to all the pleadings before the court, including the plaintiff's memorandum of law. **Pagan v. New York State Div. of Parole**, 2002 WL 398682, at *3 (S.D.N.Y. Mar. 13, 2002). *Pro se* plaintiffs are not, however, completely relieved of pleading requirements. In order to avoid dismissal, a plaintiff must do more than plead mere "[c]onclusory allegations or legal conclusions masquerading as factual conclusions." **Gebhardt v. Allspect, Inc.**, 96 F. Supp. 2d 331, 333 (S.D.N.Y. 2000) (*quoting* 2 James Wm. Moore, Moore's Federal Practice ¶ 12.34[1] [b] (3d ed. 1997)).

  2. Analysis

    a. Billups's Title VII Claim

  Under Title VII of the Civil Rights Act of 1964, it is "an unlawful employment practice for an employer. . . to fail or refuse to hire . . . or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1) (1994). A plaintiff alleging employment discrimination need only provide a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a); *see also* **Swierkiewicz v. Sorema**, 534 U.S. 506, 512 (2002). The complaint need only "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." **Swierkiewicz**, 534 U.S. at 512 (*quoting* **Conley v. Gibson**, 335 U.S. 41, 47 (1957)); *see also* **Aguilar v. New York Convention Ctr. Operating Corp.**, 2002 WL 844397, at *2 (S.D.N.Y. May 2, 2002).

  A review of the pleadings under the liberal **Swierkiewicz** standard indicates that Billups

has provided a short and plain statement, which provides notice to the defendant that he is asserting a claim of employment discrimination based on his race in violation of Title VII.  **See Swierkiewicz**, 534 U.S. at 512.  As an African American, Billups is a member of a protected class under Title VII.  Further, he appears to be qualified for, but was denied, a promotion.  Billups holds a bachelors degree in Business Management and had over seven years experience in the field of paintless dent removal prior to his employment with DWIC.  Billups Aff. at 1-2.  Billups alleges that although DWIC was fully aware of his interest in pursuing a management position within the company, the promotions were given to less qualified white applicants.  **Id.**  Billups's allegations assert a cognizable Title VII claim.

DWIC also argues that Billups's Title VII claim should be dismissed for failure to state a claim upon which relief can be granted under the Missouri compulsory counterclaim rule.  Def. Mem. at 11-12.  The compulsory counterclaim rule is an "alternative form by which the courts enforce the principles of res judicata and collateral estoppel."  **Harmon v. Headley**, 95 S.W.3d 154 (Mo.App.W.D. 2003)).  "Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so . . ."  **Allen v. McCurry**, 449 U.S. 90, 96 (1980).  Therefore, Missouri's compulsory counterclaim rule governs whether Billups's Title VII cause of action is barred.  See **Marine Midland Bank v. Slyman**, 995 F.2d 362, 365 (2d Cir. 1993).

Missouri's compulsory counterclaim rule incorporates the language of Federal Rules of Civil Procedure 13(a) and "serve[s] as a means of bringing all logically related claims into a single litigation, through the *penalty of precluding the later assertion of omitted claims*."  **Joel Bianco Kawasaki Plus v. Meramac Valley Bank**, 81 S.W.3d 528, 532 (Mo. 2002) (*en banc*)

11

(internal citations omitted) (emphasis in original); *see also* **Bankcard Systems, Inc. v. Miller/Overfelt, Inc.**, 219 F.3d 770, 773 (8th Cir. 2000).  The compulsory counterclaim rule, Mo. Sup. Ct. R. 55.32(a), provides in pertinent part that "[a] pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction."  **Joel Bianco**, 81 S.W.3d at 531-32; *see also* **Bankcard**, 219 F.3d at 773.  The term "transaction," as used in the context of this rule, is interpreted broadly.  *See* **State ex rel. J.E. Dunn, Jr. & Assoc., Inc. V. Schoenlaub**, 668 S.W.2d 72, 75 (Mo. 1984) (*quoting* **Cantrell v. City of Caruthersville**, 359 Mo. 282 (1949)).  Furthermore, "[w]hen the facts which would support a defense to the original claim would also support a counterclaim, the two arise from the same transaction."  **Bankcard**, 219 F.3d at 773.

     DWIC maintains that Billups's employment discrimination claims under Title VII are barred because they arise out of the same transaction and occurrence as the causes of action stated in the underlying state court proceeding.  Def. Mem. 12-13.  DWIC asserts that Billups's allegations of a "discriminatory scheme" existed at the commencement of the state court action and should have been raised as a counterclaim because they rely, in large part, on DWIC's enforcement of the agreements.  **Id.**  While Billups claims that his suspension and subsequent termination were part of DWIC's discriminatory employment practices, he makes additional allegations in his Title VII claim.  Compl. ¶¶ 6, 11-13.  Billups further asserts that he was subjected to disparate treatment through DWIC's failure to promote him because of his race and, instead, promoted "less qualified white applicants."  **Id.** at ¶ 6.  If the basis of Billups's

12

discrimination claim relied solely on facts surrounding his suspension and discharge, this Court would aptly find that it is logically related to the state court action because both claims arise out of the enforcement of the agreements.  *See* **Kawasaki Plus**, 81 S.W.3d at 532-33.  However, his disparate treatment claim does not arise out of the enforcement of the agreements.  Billups has sufficiently alleged all of the elements of a Title VII claim, and these causes of action are unrelated to the enforcement of the agreements.  Therefore, I recommend that DWIC's motion to dismiss for failure to state a claim be **DENIED** on Billups's Title VII claims.

### b. Billups's New York Law Claims

Billups asserts a violation of New York's Labor Law, and a discrimination claim under New York Executive Law § 296.  Compl. at ¶¶ 15, 16, 42.  Its labor law claim alleges that in the course of his employment with DWIC, he accrued overtime and commission pay that he did not receive.  **Id.** at ¶ 15.  He estimates that the collective amount due to him by DWIC is approximately $20,000.  **Id.**  Under New York's Labor Law, an employee is entitled to the payment of commission and wages and increased compensation for overtime.  N.Y. LAB. LAW art. 6, § 191(c), (d); art. 5, tit. 1, § 160 (McKinney 2002).  Billups also alleges that DWIC violated New York Executive Law § 296 by discriminating against him based upon race in terms of employment, compensation, and in discharge from employment.  Compl. at ¶ 42; N.Y. EXEC. LAW art. 15, § 296 (McKinney 2005).  He claims that he was subject to disparate treatment and was denied a promotion based upon his race.  Compl. at ¶ 6.  Under **Hishon**, relief can be granted under these set of facts if proved to be consistent with his allegations.  467 U.S. at 73.  Therefore, Billups sufficiently alleged both the labor law and New York discrimination claims and they are not precluded by the Missouri state court action because they do not arise from the "same

13

transaction or occurrence" as the agreements.  *See* **Kawaski Plus**, 81 S.W.3d at 532-33.

However, the agreements signed by both parties upon commencement of employment contained a choice of law provision indicating that Missouri law will govern any disputes.  Opp. Aff. at Exh. C, ¶ 14.  DWIC asserts that these New York claims are not cognizable under Missouri law.  *See* Def. Mem. at 13.  While a contractual choice of law provision is almost always enforceable, under New York law, it does not bind the parties with respect to noncontractual causes of action.  **Plymack v. Copley Pharm., Inc**., 1995 WL 606272, at *5 (S.D.N.Y. Oct. 12, 1995).  In this circuit, courts have held that a choice of law provision governs only a cause of action that is contractual in nature.  *See* **Klock v. Lehman Bros. Kuhn Loeb Inc.**, 584 F. Supp. 210, 215 (S.D.N.Y. 1984); *see also* **Krock v. Lipsay**, 97 F.3d 640 (2d Cir. 1996).  None of the issues involved with the labor law or discrimination claim are within the scope of the agreements, which is limited to noncompetition and nondisclosure of information.  *See* Opp. Aff., Exh. C. Thus, both of these claims are noncontractual in nature and are not bound by the choice of law clause.

In addition, the language of the choice of law provision is considered in determining the extent of its reach.  In **Turtur v. Rothschild Registry Intern., Inc.,** tort claims that were not addressed in the contract were still subject to the choice of law provision due to its broad language stating that "New York law would govern any controversy *arising out of or relating to* the contract.  26 F.3d 304, 309-10 (2d Cir. 1994) (emphasis added).  However, this case is distinguishable from **Turtur** because the choice of law provision here was drafted more narrowly in stating: "any litigation involving any noncompliance with or breach of the agreement, or regarding the validity and/or enforceability of the agreement, shall be filed and conducted in

Missouri." *See* Opp. Aff., Exh. C. It is evident that the language used in the agreements excludes the causes of action claimed by Billups under New York law. Therefore, I recommend that DWIC's motion to dismiss Billups's New York claims for failure to state a claim be **DENIED.**

### c. Billups's remaining claims

Billups's third, fourth, fifth, sixth, seventh, and eighth causes of action are precluded from review by Missouri's compulsory counterclaim rule. Due to the broad interpretation of the language "same transaction or occurrence," **State ex rel. J.E. Dunn, Jr.**, 668 S.W.2d at 75, all of these claims relate to the legality of the agreements and the resulting injuries from their enforcement. Therefore, under the compulsory counterclaim rule, they should have been raised as counterclaims by Billups in the Missouri state action. Since he failed to do so, I recommend that DWIC's 12(b)(6) motion to dismiss these claims be **GRANTED**.

## C. Improper Venue

### 1. Standard for Dismissal Under 12(b)(3)

In determining a Rule 12(b)(3) motion to dismiss for improper venue, the Court has broad discretion, and may consider a number of factors including: "(1) the convenience of witnesses, (2) the convenience of the parties, (3) the location of relevant documents and the relative ease of access to sources of proof, (4) the locus of operative facts, (5) the availability of process to compel the attendance of unwilling witnesses, (6) the relative means of the parties, (7) the forum's familiarity with the governing law, (8) the weight accorded the plaintiff's choice of forum, and (9) trial efficiency and the interests of justice, based on the totality of the circumstances." **Fischer v. Hopkins**, 2003 WL 102845, at *4 (S.D.N.Y. Jan. 9, 2003) (internal citation omitted).

**2. Analysis**

In addition to the choice of law provision contained in the agreements signed by Billups, a forum selection clause was included that specified Missouri courts as the exclusive venue to hear any disputes arising from the agreements. Opp. Aff. at Exh. C, ¶ 14. DWIC alleges that Billups agreed to litigate all claims arising out of *his employment relationship with DWIC* in Missouri and that, therefore, venue is improper in New York. Def. Mem. at 2. (emphasis added). However, the language of the clause specifically refers only to the trainee secrecy, noncompete, and nondisclosure agreements. Opp. Aff., Exh. C; *see supra* p. 15. The forum selection clause does not purport to govern all disputes relating to Billups's employment with DWIC. Since all of Billups's other claims were dismissed on separate grounds, DWIC's 12(b)(3) motion to dismiss only applies to the Title VII and New York law claims. These claims are not bound by the forum selection clause because they pertain to discrimination and employment practices, which are not addressed in the agreements. Accordingly, DWIC's motion to dismiss Billups's first, second, and ninth (Title VII, New York labor laws, New York Executive law, respectively) causes of action should be **DENIED.**

## V.  CONCLUSION

For the reasons set forth above, I recommend that DWIC's motion to dismiss Billups's third, fourth, fifth, sixth, seventh, and eighth claims be **GRANTED**; and the motion to dismiss the first, second, and ninth causes of action be **DENIED.** Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have ten (10) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to

the chambers of the Honorable Deborah A. Batts, 500 Pearl Street, Room 2510, and to the chambers of the undersigned, Room 1970. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See* **Thomas v. Arn**, 474 U.S. 140, 150 (1985); **Small v. Secretary of Health and Human Services**, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); 28 U.S.C. § 636(b)(1) (West Supp. 1995); FED. R. CIV. P. 72, 6(a), 6(e).

**DATED: August 31, 2007**
**New York, New York**

Respectfully Submitted,

*/s/ Ronald L. Ellis*

The Honorable Ronald L. Ellis
United States Magistrate Judge

**Copies of this Report and Recommendation were sent to:**
Plaintiff
Lawrence D. Billups
153 A Lexington Avenue
Brooklyn, NY 11216

Counsel for Defendant

John D'Ercole, Esq.
Robinson Brog Leinwand Greene Genovese & Gluck P.C.
1345 Avenue of the Americas
New York, New York 10105