UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
LAWRENCE D. BILLUPS,

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/14/10

05 Civ. 9356 (DAB)

            Plaintiff,      MEMORANDUM & ORDER

- against -

DENT WIZARD INTERNATIONAL CORP.,

                    Defendant.
-----------------------------------X
DEBORAH A. BATTS, United States District Judge.

Plaintiff Lawrence D. Billups ("Billups" or "Plaintiff")
brings this employment discrimination action against his former
employer, Defendant Dent Wizard International Corporation ("Dent
Wizard" or "Defendant") pursuant to 42 U.S.C. § 2002e et seq. of
the Civil Rights Act of 1964 ("Title VII"), New York State Labor
Law, and New York Executive Law § 296 (New York State Human
Rights Law, or NYSHRL).[1]  Plaintiff, an African-American male,
alleges that Defendant subjected him to disparate treatment when
it failed to promote him to a managerial position because of his
race, and instead promoted less qualified white applicants.
Plaintiff further alleges that Defendant failed to pay Plaintiff
overtime pay and commissions to which he was due under his
employment agreement.

---

[1] Only Counts One, Two, and Nine of the Complaint remain, and are
at issue in Defendant's Motion for Summary Judgment, now before
the Court.  The Court previously dismissed Counts Three through
Eight in its October 31, 2007 Order adopting Magistrate Judge
Ronald L. Ellis' Report and Recommendation dated August 31, 2007.

Defendant has moved for summary judgment, pursuant to Fed. R. Civ. P. 56, on each of Plaintiff's remaining claims.  For the reasons set forth below, Defendant's Motion for Summary Judgment is GRANTED in its entirety.

## I.  FACTUAL BACKGROUND

The following facts are undisputed except where noted.

Defendant Dent Wizard is a corporation in the business of providing automotive reconditioning services, including paintless dent removal ("PDR") services, to customers across the country. (Fedorowich Aff. ¶ 2.)  In 2001, Plaintiff contacted Dent Wizard to inquire about open positions for PDR technicians in Brooklyn, New York, where Plaintiff lived.  (Billups Dep. Tr. at 13:5-14:18, at D'Ercole Aff., Ex. J.)  Plaintiff had seven years of experience working as a PDR technician at that time.  (Billups Dep. Tr. at 13:2-4.)  After speaking by phone with Dent Wizard managers Jerry McCarty ("McCarty") and Carl Lekebush ("Lekebush"), and meeting with Sal Montaperto ("Montaperto"), who Plaintiff believed to be a lower level manager under Lekebush, Plaintiff was hired by Defendant as a PDR technician servicing accounts in Brooklyn, Staten Island, and Queens in October 2001. (Billups Dep. Tr. at 25:3-11, 27:7-25, 31: 2-6.)  Plaintiff reported initially to McCarty and Lekebush, and later, when McCarty left the company, to Montaperto.  (Id. at 29-32.)

2

After he was hired, Plaintiff attended a brief segment of Dent Wizard's PDR technician training in St. Louis, Missouri, (id. at 37:7-38:21) where he was provided with a "Welcome Package" that included a copy of the Dent Wizard Employee Handbook (the "Handbook"). (Def.'s 56.1 Stmt. ¶ 19; Fedorowich Aff., Ex. A.)  At page 24, in a section entitled "OUTSIDE EMPLOYMENT", the Handbook states, in pertinent part:

> If management feels that outside employment prohibits an employee from fulfilling their obligations to the Company, they will be asked to resign or to leave the outside employment.  The nature of the Company's business requires the complete commitment and loyalty of full-time regular employees.  So that you can do your best, outside jobs are discouraged for full-time employees.
>
> Technicians cannot provide Dent Wizard service outside his employment and/or for personal gain.

(Handbook at 24, at Fedorowich Aff., Ex. A.)  Plaintiff never read the Handbook.  (Billups Dep. Tr. at 192.)  Plaintiff does not recall receiving the Handbook in the package of materials provided in Missouri, but does not deny receiving it.  (Id.) Rather, Plaintiff "got rid of all that stuff" upon his return to New York, "didn't go over it, and [] just started working right away."  (Id.)  Plaintiff subsequently received training while employed with Dent Wizard which permitted him to advance to the levels of four-star and five-star technician.  (Def.'s 56.1 Stmt. ¶ 20; Billups Dep. Tr. at 39-42.)

3

As a PDR technician at Dent Wizard, Plaintiff received a fixed salary and a commission percentage based upon his training level. (Def.'s 56.1 Stmt. ¶ 21.)  As he advanced in training level, Plaintiff's commission percentage increased.  (Id. ¶ 22.) Plaintiff was further entitled to overtime compensation for any hours worked in a given week in excess of forty hours.  (Def.'s 56.1 Stmt. ¶ 40.)  All employees of Defendant were required to submit a signed weekly time sheet recording the number of hours worked each week.  (Id. ¶ 41; Baker Aff. ¶ 3.)  When a time sheet indicated that an employee had worked more than forty hours, the employee's pay for that period included payment for overtime. (Baker Aff. ¶ 5.)  Every month, PDR technicians receive a commission statement reflecting the sales generated and the resultant net commissions earned by the technician, as well as any overtime payment due in accordance with the time sheets submitted.  (Baker Aff. ¶ 9.)  The commission statements provided to Plaintiff, reprinted from Dent Wizard's database, correlate with his signed time sheets, reflecting payment by Defendant to Plaintiff for all of the overtime hours he reported over the course of his employment.  (Id. ¶ 43; Baker Aff., Exs. A & B.)

Plaintiff claims that Defendant discriminated against him throughout his employment with Defendant, from October 2001 through his termination in February 2005, and well beyond that

4

date.  (Billups Dep. Tr. at 56-58.)[2]  Plaintiff provides no facts

to support his claim that Dent Wizard discriminated against him

in 2001.  (See Billups Dep. Tr. at 58:12-59:20.)[3]  Plaintiff

alleges that in and after 2002, Dent Wizard discriminated against

Plaintiff when it "hired less qualified white managers over

[Plaintiff]", including Montaperto, Ira Langer ("Langer"), and

Mike Maruzzella ("Maruzzella").  (Billups Dep. Tr. at 59:24-60:5,

63:4-10, 174:15-16.)  Plaintiff does not allege that any employee

of Dent Wizard was promoted from within the company to management

instead of Plaintiff while he was employed with Dent Wizard, but

rather that others were hired to managerial positions that he

could have filled.  (Billups Dep. Tr. at 174:11-176:12-16.)

  Defendant attests that Montaperto began working for Dent

Wizard as a PDR technician in September 1999, and "was a lead

technician from 2001 through 2004 with some managerial/

---

[2]  Plaintiff further claims that Defendant will discriminate
against him into the distant future, "probably" for the rest of
his life.  (Billups Dep. Tr. at 57-58.)

[3] Plaintiff alleges, without providing any documentary evidence,
that his pay stubs and commission statements from 2001 would
"maybe" reflect Defendant's discrimination against him because
those documents would "probably" reflect "the manipulation of the
figures that denied me overtime pay, and often denied me the
proper commissions off of the work performed."  (Billups Dep. Tr.
at 60:6-22.)  Defendant has provided the time sheets Plaintiff
submitted to Dent Wizard over the course of his employment, and
the corresponding commission statements that Defendant provided
to Plaintiff, which together belie Plaintiff's naked and
unsupported assertion that he was denied proper overtime pay and
commissions.  (See Baker Aff., Exs. A & B.)

supervisory responsibilities over portions of New York, including Manhattan." (Fedorowich Aff. ¶ 12.) According to former Vice President of Operations Addison Thomas, Montaperto was promoted to the position he held during Plaintiff's employment well before Plaintiff was hired by Dent Wizard. (Thomas Dep. Tr. at 38, at D'Ercole Aff., Ex. I.) Defendant attests that Langer was hired by Dent Wizard on August 12, 2002 as a general sales manager for the New England region, and was a new hire at that time. (Fedorowich Aff. ¶ 11.) Defendant attests that Langer was never promoted while Plaintiff was employed with Dent Wizard, and that rather, on January 1, 2005, Langer was effectively <u>demoted</u> when Dent Wizard decreased his geographic area of responsibility and changed his title to district manager for the State of New Jersey and parts of New York. (<u>Id.</u>) Maruzzella was hired on January 4, 2005 as a local sales manager for New York, just one month before Plaintiff was terminated from the company. (<u>Id.</u> ¶ 13.)

At no time after his original application for employment with Defendant did Plaintiff fill out an application for a management position with Dent Wizard. (Billups Dep. Tr. at 80:3-16.) Plaintiff alleges that he never filled out an application for a management position because he "wasn't given an application." (<u>Id.</u> at 80:14-16.) Plaintiff did not apply for the position filled by Langer, and alleges that he did not know

6

the job was available.  (Id. at 63:11-18.)  Defendant attests
that Dent Wizard posts job openings on the company's intranet
communications site, which every employee may access, and that it
posted the managerial position filled by Maruzzella on the site
before he was hired.  (Def.'s 56.1 Stmt. ¶ 31; see Fedorowich
Aff. ¶¶ 7-8, 13, Ex. B.)  Plaintiff testified that he never went
onto Dent Wizard's website looking for job openings, and never
contacted Defendant's corporate office to ask whether there were
any management positions available.  (Billups Dep. Tr. at 65:17-
24.)  Rather, Plaintiff testified that he "didn't apply for
anything" but "assumed [he] would get something locally."  (Id.
at 97:9-12.)

Plaintiff testified that he inquired biannually, during each
of his performance reviews, as to whether there were managerial
positions available with Dent Wizard.  (Id. at 63:19-65:3.)
Plaintiff alleges that he did not feel he had any other time to
discuss job-related issues with the company except during these
reviews.  (Id. at 65:4-8.)

In the "Employee Remarks" section of his year-end
performance review with Dent Wizard for 2002, Plaintiff wrote:

> "The review was positive and accurate.  Sal has been a
> great manager.  Dent Wizard has really stepped up in
> terms of taking care of the 'techs.'  I have enjoyed
> working w/ Dent Wiz."

(Def.'s 56.1 Stmt. ¶ 36.)  In his evaluation dated December 4,
2003, Plaintiff wrote:

> "I'm very pleased with the review as well as the Co.  Sal
> has been great.  The only issue I have at this time is
> management's  reaction  to  simple  requests  and  open
> conversations any time I go against the grain.  It is an
> attitude problem that is bogus."

(Billups Dep. Tr. at 138:9-139:15.)  Plaintiff alleges that,
although he did not put anything in writing, he "made sure to let
them know" during his 2003 review that he wanted to be a manager,
and that he "remember[s] specifically talking to them about
that."  (Id. at 139:16-140:14.)  In his December 13, 2004
performance review, Plaintiff wrote: "The review process was fair
let's keep it going in 2005!"  (Fedorowich Aff., Ex. C, at 8;
Billups Dep. Tr. at 140:20-141:9.)  Plaintiff alleges that this
statement was "a satirical statement 'keep on doing what you are
doing because I'm about to be gone'" because at the time of his
December 2004 review, Plaintiff "knew [he] . . . was going to be
quitting".  (Id. at 142:3-9.)

Plaintiff testified that he earned more than $85,000
performing PDR services for Dent Wizard in 2003 and more than
$100,000 in 2004.  (Billups Dep. Tr. at 97:18-98:3.)  His W-2
reported income for 2003 was $90,868 and for 2004, $117,362.
(Def.'s 56.1 Stmt. ¶ 37.)  Except for upper level management,
managers at Dent Wizard do not earn nearly as much as Plaintiff

8

did as a PDR technician in 2003 and 2004.  (Id. ¶ 38.)  Former

Vice-President of Operations at Dent Wizard, Addison Thomas,

testified that it would be "impossible" for an entry level

manager - typically salaried at $40,000-$50,000 - to make what

Plaintiff earned in 2004.  (Thomas Dep. Tr. at 38, at D'Ercole

Aff., Ex. I.)

In his December 13, 2004 performance review, Plaintiff wrote

that his short-term goals were "more monthly income" and to

"spend more time w/ family", and that one of his long-term goals

was to "[b]e in a position to become a manager over a specific

area." (Fedorowich Aff., Ex. C, at 3.)  Plaintiff admits that he

made these statements in December 2004, and explains that he

> "liked the company and enjoyed the environment, he was
> a hard worker and a team player, he felt that if he just
> kept working hard and being a team player that his
> actions would speak louder than his words and that he
> would be rewarded eventually; by being promoted to a
> management position."

(Pl.'s 56.1 Stmt. ¶ 36) (emphasis added.)  Plaintiff states

further that

> "yes I enjoyed making money, but I do have a college
> degree in management and know that once I got my first
> management position, yes I would make less money in the
> beginning, but in the long run the sky would be the
> limit.  I could advance on a management level and achieve
> recognition as a leader and one who knows the business
> from a grass roots level on up."

(Billups Aff. ¶ 12.)

9

Plaintiff never complained in writing while employed with Dent Wizard that the company was hiring white managers.  (Billups Aff. ¶ 8.)  Rather, Plaintiff alleges that "[o]n several occasions, I orally expressed my views to the company."  (Id. ¶ 9.)  Plaintiff further asserts that, "I always expressed my intent and dream of being promoted, or invited to be a manager", "I am the type of person who wants to be noticed and rewarded via my work and leadership accomplishments", and "I believe my actions speak louder than words." (Id. ¶¶ 5-6, 10-11.)  Plaintiff never complained in writing of any adverse discriminatory action taken against him by any person employed by Dent Wizard.  (Def.'s 56.1 Stmt. ¶ 35.)  Plaintiff alleges that he complained to someone at Dent Wizard in 2002 about the discrimination, but he does not remember to whom he complained.  (Billups Dep. Tr. at 65:22-25, 90.)

Plaintiff was terminated from Dent Wizard on February 5, 2005.  (Def.'s 56.1 Stmt. ¶ 1.)  Defendant alleges, and Plaintiff denies, that Billups was terminated when Dent Wizard discovered that he was performing PDR services for his own personal gain at BMW of Manhattan, Dent Wizard's largest New York City customer, through a company he had formed and was operating named NYC Dent Werks.  (Id.)  After Plaintiff's termination, Dent Wizard brought an action against him in Missouri state court (the "Missouri

10

Action") for breach of his employment agreement with Defendant, based, among other things, upon his continued servicing of BMW of Manhattan and other Dent Wizard customers. (Id. ¶ 2; see D'Ercole Aff., Ex. F.) Dent Wizard obtained a preliminary injunction restraining Plaintiff from performing PDR services for Dent Wizard's customers, including BMW of Manhattan. (Def.'s 56.1 Stmt. ¶ 3.) Plaintiff never abided by the terms of the preliminary injunction, continuing to perform PDR work for BMW of Manhattan throughout the entire course of the Missouri Action, and a Contempt Judgment was entered against him in the amount of $482,300. (Id. ¶ 4; D'Ercole Aff., Ex. F.) The Final Judgment in the Missouri Action awarded Dent Wizard $169,552.92 and a permanent injunction against Plaintiff, finding and concluding that:

> "Defendant Billups and Defendant Channan have each repeatedly and intentionally breached the restrictive covenants contained in their respective Employment Agreements, and they have conspired together to breach their Employment Agreements and to divert the business of [Dent Wizard's] largest Manhattan customer, BMW of Manhattan, away from [Dent Wizard] and to their own personal benefit and/or to entities they control or have an interest in."

(Def.'s 56.1 Stmt. ¶ 6; D'Ercole Aff., Ex. G.)

Plaintiff filed a charge of discrimination against Defendant with the Equal Opportunity Employment Commission ("EEOC") on June 27, 2005, alleging that Defendant failed to promote him and

11

unlawfully terminated him on account of his race.   (Def.'s 56.1

Stmt. ¶¶ 7-8; Oldham Aff., Ex. 1.)   Plaintiff maintains, contrary

to Defendant's allegation, that he did not file the EEOC charge

as retaliation for the company filing suit against him in

Missouri state court.   (Billups Aff. ¶ 14.)

       Plaintiff filed this action against Defendant on November 3,

2005, asserting nine causes of action.   Defendant moved to

dismiss the Complaint, and on August 31, 2007, Magistrate Judge

Ronald L. Ellis issued a Report and Recommendation to this Court,

recommending that the Court grant Defendant's Motion to Dismiss

as to Counts Three through Eight only.   The Court adopted the

Magistrate's Report and Recommendation in an Order dated October

31, 2007.   On April 6, 2009, Defendant moved for summary judgment

on Plaintiff's three remaining claims - asserted in Counts One,

Two, and Nine of the Complaint.   Defendant's Motion was fully

submitted to this Court as of June 8, 2009.


## II.   DISCUSSION

### A.   Legal Standard for a Motion for Summary Judgment

       A district court should grant summary judgment when there is

"no genuine issue as to any material fact," and the moving party

is entitled to judgment as a matter of law.   Fed. R. Civ. P.

56(c); see also Hermes Int'l v. Lederer de Paris Fifth Ave.,

Inc., 219 F.3d 104, 107 (2d Cir. 2000).  Genuine issues of

material fact cannot be created by mere conclusory allegations;

summary judgment is appropriate only when, "after drawing all

reasonable inferences in favor of a non-movant, no reasonable

trier of fact could find in favor of that party."  Heublein v.

United States, 996 F.2d 1455, 1461 (2d Cir. 1993) (citing

Matsushita Elec. Industr. Co. v. Zenith Radio Corp., 475 U.S.

574, 587-88 (1986)).

        In assessing when summary judgment should be granted, "there

must be more than a 'scintilla of evidence' in the non-movant's

favor; there must be evidence upon which a fact-finder could

reasonably find for the non-movant."  Id. (citing Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).  While a court

must always "resolve ambiguities and draw reasonable inferences

against the moving party," Knight v. U .S. Fire Ins. Co., 278

F.3d 93, 101 (2d Cir. 2002), "mere speculation and conjecture is

insufficient to preclude the granting of the motion."  Guilbert

v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007).  Instead, when the

moving party has documented particular facts in the record, "the

opposing party must 'set forth specific facts showing that there

is a genuine issue for trial.'"  Zelnik v. Fashion Institute of

Technology, 464 F.3d 217, 224 (2d Cir. 2006) (quoting Fed. R.

Civ. P. 56(e)).  Establishing such facts requires going beyond

                                    13

the allegations of the pleadings, as the moment has arrived "'to put up or shut up.'"  Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (citation omitted).  Unsupported allegations in the pleadings thus cannot create a material issue of fact.  Id.

"It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases," and "the salutary purposes of summary judgment - avoiding protracted, expensive and harassing trials - apply no less to discrimination cases than to . . . other areas of litigation."  Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001) (quoting Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985)).

## B.   Employment Discrimination (Counts One and Nine)

Billups alleges that Dent Wizard subjected him to disparate treatment based on his race, in violation of Title VII and the NYSHRL, because Defendant denied him a promotion to a management position while affording promotions to "less qualified white applicants."  (Compl. ¶ 6.)[4]  Plaintiff alleges that, although he repeatedly expressed to Defendant his interest in becoming a

---

[4] Plaintiff also alleges that he was suspended and terminated by Dent Wizard based on his race.  However, all of Plaintiff's claims for wrongful termination have been dismissed as precluded by the Missouri Action (see Report and Recommendation of Magistrate Judge Ellis, August 31, 2007; Order of Magistrate Judge Ellis, November 19, 2008), and as such, the Court will not consider them here.

manager, Defendant failed to promote him, and instead hired three white males - Langer, Montaperto, and Maruzzella - as managers.

### 1. Statute of Limitations

Under Title VII, a plaintiff must file an administrative complaint with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the alleged discriminatory act. Petrosino v. Bell Atlantic. 385 F.3d 210, 219 (2d Cir. 2004). When, as here, a plaintiff's allegations of discrimination extend beyond the 300-day limitations period, the nature of the claim determines what consideration will be given to the earlier conduct. Id. at 220. Title VII claims for termination or failure to promote are based on "discrete acts," each giving rise to a separate cause of action. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002). "The law is clear that termination and promotion claims may not be based on discrete acts falling outside the limitations period." Petrosino, 385 F.3d at 220 (citing Morgan, 536 U.S. at 114). Evidence of earlier promotion denials may be considered only as "background evidence" to a timely claim. Id. (citing Morgan, 536 U.S. at 113).

Plaintiff filed his charge of discrimination with the EEOC on June 27, 2005. (Def.'s 56.1 Stmt. ¶ 7.) As such, any claim

15

based on a discrete act of failure to promote that precedes
August 31, 2004 is time-barred under Title VII.  A party has
three years from the date of any allegedly discriminatory act to
file suit under New York Executive Law § 296, the NYSHRL.  N.Y.
C.P.L.R. § 214(2).

Plaintiff alleges first that Defendant discriminated against
him when it hired Ira Langer "over [Plaintiff]" as a manager in
2002.  (Billups Dep. Tr. at 59-61.)  Plaintiff admits that Langer
was hired in 2002 (see id.) and Defendant affirms that Langer was
hired by Dent Wizard on August 12, 2002 as a general sales
manager for the New England Region.  (Fedorowich Aff. ¶ 11.)
Langer's hire is a discrete act far outside the limitations
period for asserting a Title VII claim, and likewise outside the
three-year limitations period for a NYSHRL claim.  Any claim to
discrimination surrounding Langer's hire is therefore time-
barred.  See Petrosino, 385 F.3d at 220.

Plaintiff also alleges that Defendant hired Sal Montaperto
"over" Plaintiff to a management position.  (See Attachment to
Plaintiff's EEOC Charge, June 17, 2005, at Oldham Aff., Ex. 1.)
However, all facts presented to the Court, including Plaintiff's
own testimony, indicate that Montaperto was both hired and
afforded managerial responsibilities before Plaintiff was hired
by Defendant, and that the expansion of Montaperto's managerial

16

responsibilities took place within the first year of Plaintiff's
employment.  Defendant attests that Montaperto was hired by Dent
Wizard in September 1999, and was "a lead technician from 2001
through 2004 with some managerial/supervisory responsibilities".
(Fedorowich Aff. ¶ 12.)  According to Addison Thomas, Montaperto
was hired and promoted "well ahead" of Billups' hire.  (Thomas
Dep. Tr. at 38, at D'Ercole Aff., Ex. I.)  Plaintiff himself
testified that when he first met with Montaperto in 2001, before
being offered the job with Dent Wizard, Montaperto had some
management responsibilities, and appeared to Plaintiff to be a
lower level manager at Dent Wizard.  (Billups Dep. Tr. at 25:3-
11.)  The only evidence before the Court that Montaperto's
management responsibilities expanded during the term of
Plaintiff's employment with Dent Wizard is Plaintiff's testimony
that Montaperto became Plaintiff's manager approximately a year
after Plaintiff was hired (id. at 30:13-31:8), and that
Montaperto took over "a large percentage" of Jerry McCarty's
responsibilities when McCarty left Dent Wizard at that time.
(Id. at 32:9-25.)  To the extent that this expansion of
responsibility constitutes a promotion, and it is not clear that
Plaintiff alleges that it does, it took place within a year of
Plaintiff's hire - so, at the latest, at the end of 2002.  Any
claim of disparate treatment surrounding the alleged promotion of

17

Montaperto is therefore time-barred under Title VII.  While time-barred under Title VII, any failure to promote claim surrounding Montaperto's expansion of managerial responsibilities in 2002 is timely under the NYSHRL, and the Court likewise considers this claim below.

Plaintiff's claim that he suffered disparate treatment when Maruzzella was hired as a manager on January 4, 2005 is timely. As such, the Court proceeds to consider Defendant's argument that this claim fails as a matter of law.


### 2. Failure to State a Claim for Failure to Promote

Under Ferraro v. Kellwood Co., 440 F.3d 96, 99 (2d Cir. 2006), "the standard for recovery under section 296 of the Executive Law is in accord with the federal standards under [Title VII]". Thus, to establish a prima facie case of a discriminatory failure to promote under Title VII or the NYSHRL, a plaintiff must ordinarily demonstrate that: (1) he is a member of a protected class; (2) he "applied and was qualified for a job for which the employer was seeking applicants"; (3) he was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications. Brown v. Coach Stores, Inc., 163 F.3d 706, 709 (2d Cir. 1998) (quoting McDonnell Douglas Corp. v. Green, 411

U.S. 792, 802 (1973)).  To state a claim for failure to promote,
the plaintiff must "allege that she or he applied for a specific
position or positions and was rejected therefrom, rather than
merely asserting that on several occasions she or he generally
requested promotion."  Brown, 163 F.3d at 710.  This specific
application requirement "ensures that, at the very least, the
plaintiff employee alleges a particular adverse employment
action, an instance of alleged discrimination, by the employer."
Id.

    As the Court of Appeals has further explained:

> "The requirement ensures that the fact finder is not left
> to speculate as to the qualifications of the competing
> candidates, the damages to be derived from the salary of
> unknown jobs, the availability of alternative positions,
> the plaintiff's willingness to serve in them (e.g., in
> other locales or on other shifts), etc.  The requirement
> also protects employers from the unfair burden of having
> 'to keep track of all employees who have generally
> expressed an interest in promotion and [to] consider each
> of them for any opening for which they are qualified but
> did not specifically apply.'"

Petrosino, 385 F.3d at 210 (quoting Brown, 163 F.3d at 710).

    Billups attempts to prove that Dent Wizard unlawfully failed
to promote him by alleging that he orally expressed to
unidentified individuals at Defendant on a number of occasions a
general interest in becoming a manager at Dent Wizard at some
point in the future.  (See Billups Aff. ¶¶ 5, 8-9.)  Plaintiff
does not allege that he applied for the specific position that

19

was filed by Maruzzella, or for any of the management
responsibilities left by McCarty which may have been taken over
by Montaperto.  Plaintiff admits, in fact, that he never applied
for any management position at all while he was employed at Dent
Wizard.  (Billups Dep. Tr. at 80, 97.)

Unfortunately for Billups, Plaintiff "cannot meet the
application requirement for stating a failure to promote claim
merely with evidence that he generally requested promotion
consideration."  <u>Brown</u>, 163 F.3d at 710; <u>see</u> <u>Petrosino</u>, 385 F.3d
at 227.  While it is true that "the facts of a particular case"
may sometimes make "a specific application a quixotic
requirement", <u>Brown</u>, 163 F.3d at 710, Plaintiff does not present
such a case.  The exception to the application rule is narrow.
<u>Id.</u> at 710.  "To be excused from the specific application
requirement, an employee must demonstrate that (1) the vacancy at
issue was not posted, and (2) the employee either had (a) no
knowledge of the vacancy before it was filled or (b) attempted to
apply for it through informal procedures endorsed by the
employer."  <u>Petrosino</u>, 385 F.3d at 226-27; <u>see</u> <u>Brown</u>, 163 F.3d at
710 n.2.  In the case of the position filled by Maruzzella,
Plaintiff has neither produced any evidence, nor even alleged,
that the position was not posted before Maruzzella was hired.
Defendant attests that Dent Wizard operates an intranet based

20

communications website which every employee may access, that
Defendant typically posts job openings on its intranet site, and
that Defendant posted the specific managerial position for which
Maruzzella was hired on the site. (Def.'s 56.1 Stmt. ¶ 31;
Fedorowich Aff. ¶¶ 7-8, 13.) Defendant has attached a copy of
the posting as an exhibit to its Motion. (See Fedorowich Aff.,
Ex. B.) Plaintiff states that he is without sufficient
information to admit or deny that the job was posted. (Pl.'s
56.1 Stmt. ¶ 31.) In fact, Plaintiff admits that never in the
course of his employment did he visit Dent Wizard's website
looking for job openings. (Billups Dep. Tr. at 80.)[5]

Because Plaintiff admits that he never applied for the
management position filled by Maruzzella, and does not even

---

[5] Further, the only written confirmation that Plaintiff ever
expressed interest in a management position with Dent Wizard
belies his claim that he even wanted to be a manager at the time
Maruzzella was hired. That is, in his December 13, 2004
performance review, less than one month before Maruzzella was
hired, Plaintiff indicated that one of his long-term goals was to
"[b]e in a position to become a manager over a specific area."
(See Fedorowich Aff., Ex. C, at 3.) Plaintiff wrote that his
short-term goals at that time were "more monthly income" and to
"spend more time w/ family." (Id.) Defendant has attested that
managers at Dent Wizard are salaried at approximately one-half of
what Billups earned in commissions as a technician in 2003 and
2004, and that it would be "impossible" for a manager at entry-
level to make what Billups was taking home at that time. (See
Thomas Dep. Tr. 16-18, 37-38.) The short- and long-term goals
Billups himself expressed just one month before Maruzzella's hire
belie any claim that he was denied a requested, or even desired,
promotion at that time.

attempt to demonstrate that the vacancy was not posted before

Maruzzella was hired to fill it, Plaintiff's failure to promote

claim fails as a matter of law.  See Brown, 163 F.3d at 710;

Petrosino, 385 F.3d at 226-27.[6]  To the extent that Plaintiff

asserts a claim of failure to promote associated with the

expansion of Montaperto's managerial responsibilities in 2002,[7]

and that claims survives as timely under the NYSHRL, such a claim

fails for the same reasons, because Plaintiff has admitted that

---

[6] Plaintiff attempts to sustain his claim by quoting the Court's
Order of February 20, 2009, in which the Court stated – upon
Defendant's initial proposition of moving for summary judgment,
and before receiving Parties' motion papers and supporting
evidence – that "[t]he Court is convinced that a motion for
summary judgment could not be determined on the merits because
there is a genuine issue of material fact in at least the
following area: whether Plaintiff expressed an interest in being
promoted to a managerial position and the position was not
posted, such that formal application was not required under
Second Circuit precedent."  Having reviewed the materials
submitted by the Parties for and against summary judgment, it is
clear to the Court that Plaintiff has raised no issue of material
fact as to the posting of Maruzzella's position that would permit
Plaintiff to escape the specific application requirement under
Second Circuit law.  See Petrosino, 385 F.3d at 226-27.  As such,
the Court's preliminary statements, made before Defendant filed
its Motion, provide Plaintiff with no relief.

[7] The Court addresses this potential claim in an overabundance of
caution, but notes that Plaintiff himself admits that he has no
facts that would show that any employee of Dent Wizard was
promoted to management from within the company instead of
Plaintiff, (Billups Dep. Tr. at 176) and by all indications
appears to be directing his claim instead at Montaperto's hire,
(see Attachment to Plaintiff's EEOC Charge, June 17, 2005, at
Oldham Aff., Ex. 1) a claim that is time-barred under both Title
VII and the NYSHRL, as explained above.

he never applied for any managerial position with Defendant, and he has neither alleged, nor produced any facts to support a claim that the vacancy left by McCarty was not posted or that Plaintiff had no knowledge of the vacancy.  See Petrosino, 385 F.3d at 226-27.  As such, Defendant's Motion for Summary Judgment is GRANTED as to Counts One and Nine.[8]

### C.   Violation of New York Labor Law (Count Two)

Plaintiff asserts in Count Two of the Complaint that Dent Wizard violated New York Labor Law by failing to pay Plaintiff overtime pay and commissions to which he was due.  (Compl. ¶ 15.) Under New York Labor Law, an employee is entitled to the payment of commission and wages and increased compensation for overtime. N.Y. Labor Law art. 6, § 191(c), (d); art. 5, tit. 1, § 160.

Defendant has supplied the Court with copies of the time sheets Plaintiff submitted over the course of his employment with Dent Wizard, (Baker Aff., Ex. A) as well as the commission

---

[8]  To the extent that Plaintiff intends to state any additional disparate treatment claim, other than failure to promote or wrongful termination, he likewise fails.  To establish a prima facie case of disparate treatment, Plaintiff must demonstrate that: (1) he is a member of a protected class; (2) his job performance was satisfactory; (3) he suffered adverse employment action; and (4) the action occurred under conditions giving rise to an inference of discrimination.  Demoret v. Zegarelli, 451 F.3d 140, 151 (2d Cir. 2006) (citing McDonnell Douglas, 411 U.S. at 802).  Plaintiff has not demonstrated - or even argued - any adverse employment action by Defendant other than its alleged failure to promote him and decision to terminate him.

statements prepared by Dent Wizard and provided to Plaintiff in
return.  (Baker Aff., Ex. B.)  The commission statements set
forth the commissions earned and paid to Plaintiff over the
course of his employment, as well as the overtime compensation
paid in accordance with the hours Plaintiff reported on his time
sheets.  (Id.)  A comparison of the two sets of documents shows
that the commission statements correlate with the hours Plaintiff
reported on his time sheets, and therefore, that Plaintiff was
paid appropriately.  Plaintiff has submitted no documentary
evidence or any other facts to contradict or suggest the falsity
of Defendant's evidence.  As such, Plaintiff has demonstrated no
basis for a claim under New York Labor Law and Defendant's Motion
for Summary Judgment on Count Two is GRANTED.

### III. CONCLUSION

For the reasons set forth above, Defendant's Motion for
Summary Judgment is GRANTED in its entirety.  The Clerk of Court
is directed to close the docket in this case.

SO ORDERED

DATED:    New York, New York

June 14, 2010

DEBORAH A. BATTS
United States District Judge

24